UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,

    Plaintiff,
 vs.            5:08-CV-1019
                (NAM/DEP)
KARENKIM, INC., D/B/A/ PAUL'S BIG M,

    Defendant.
_____

ANDREA BRADFORD, JUDITH GOODRICH
and DEBORAH HASKINS,

    Plaintiff-Intervenors,

 vs.

KARENKIM, INC., D/B/A/ PAUL'S BIG M
GROCER and KAREN CONNORS and ALLEN
MANWARING, individually and as aiders and abettors,

    Defendants.
_____

APPEARANCES:         OF COUNSEL:

UNITED STATES EMPLOYMENT
 OPPORTUNITY COMMISSION    Markus L. Penzel, Esq.
*Attorneys for Plaintiff*
John F. Kennedy Federal Building
Government Center, Room 475
Boston, Massachusetts 02203-0506

SATTER & ANDREWS, L.L.P      Mimi Satter, Esq.
*Attorneys for Plaintiff-Intervenors*
McCarthy Building
217 South Salina Street
Syracuse, New York 13202

ANTONUCCI LAW FIRM                                         David P. Antonucci, Esq.
*Attorneys for Defendants*
The Bonadio Building
12 Public Square
Watertown, New York 13601

Norman A. Mordue, Chief U.S. District Judge

MEMORANDUM-DECISION and ORDER

I.    INTRODUCTION

Plaintiff has brought this action on behalf of three charging parties under 42 U.S.C. 2000e-5(f)(1) and (3) and 2000e-6 ("Title VII") and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. §1981a. Plaintiff alleges that defendants are liable to the charging parties for sex discrimination based on sexual harassment, constructive discharge and retaliation. The charging parties have intervened and asserted their own individual claims against defendants. Defendants have moved for summary judgment dismissing the complaint. Plaintiff has cross-moved for summary judgment dismissing defendants' affirmative defense.

II.   RELEVANT FACTS

KarenKim., d/b/a Paul's Big M is a grocery store located in Oswego, New York. The store employs at least 55 employees, but more during the summer months. Defendant Karen Connors has been the owner, officer and director of the company since she and her sister bought it from their father in or about 1999. Defendant Allen Manwaring has been employed by Paul's Big M since 2001 as the store's General Manager. In his capacity as General Manager, defendant Manwaring "r[an] the store." He was also responsible for "all business operations including purchasing, human resources, long and short term planning, financial planning, etc.." Manwaring, along with office manager Marlene Davis and Diane Vickery, hired, fired and

2

disciplined employees. Defendants Connors and Manwaring made decisions about the business "together."[1] In addition to their professional relationship within the company, defendants Connors and Manwaring began a personal relationship in March 2001. They became engaged in December 2006 and have a child together.

Plaintiff-intervenor Andrea Bradford began working in the produce department of Paul's Big M in August or September of 2004. According to plaintiff-intervenor Bradford, defendant Manwaring began sexually harassing her in 2005. In May 2005, she alleges that Manwaring "grabbed her nipple" and said "Charlie [referring to a fellow employee] wishes he had these." In another instance, Bradford states Manwaring told her "you look kind of cute in that apron," when it was warm at work and she took her sweatshirt off. Around that same time, Bradford alleges Manwaring told her "You really should wear tighter clothes to work." The next day she alleges he said in front of her co-worker Lori Casler, "I'm glad to see Andrea's wearing tighter clothes." Plaintiff-intervenor Bradford states that she discussed this incident with Casler who was "not surprised" by defendant inappropriate Manwaring's behavior. Bradford claims that Casler told her that if she "said anything to [defendant] Karen [Connors]" about the incident, she would "not be believed."

Bradford alleges that defendant Manwaring came into the produce room one day, pointed at her breasts and said "Those are nice." Then she asserts defendant Manwaring touched her

---

[1] Plaintiff notes that defendant Manwaring's salary was over $5,000.00 higher than defendant Connors' salary in 2007. However, this does not account for year end bonuses tallied by Connors' father, Paul Heins, who, though no longer an employee of the company, decided who received bonuses and in what amount. The record reflects that although defendant Connors recalls she received a bonus in 2007, she does not remember the amount.

"bottom private area" and said "That's nice too." According to Bradford, Manwaring told her "You can touch me down there whenever you want, it will be kind of I help you out, you help me out and nobody has to know." Bradford states that there was an incident in 2005 when she was preparing fruit with a large knife. She alleges Manwaring approached her, unzipped his pants and said "You wouldn't cut my dick off?" Bradford states that she said "Yes, I would," and slammed her knife down on her cutting board at which time Manwaring zipped up his pants and left. On one occasion Bradford alleges that Manwaring came into the produce room and said "One of these days, I'm going to pick you right up and F your brains out."

For Christmas in 2006, Bradford asserts that defendant Manwaring gave her several inappropriate gifts including a banana vibrator, a deck of "dirty playing cards," and a box of penis lollipops. In response to the gifts, Bradford said she "laughed embarrassingly" because the gifts were "funny" but also "inappropriate." Nevertheless, she later managed to "consume" the penis lollipops and still has the other gifts in her posssession.[2] Sometime in 2007, plaintiff-intervenor Bradford states that Manwaring came up behind her and said "I haven't fucked with you in a long time." When Bradford told him to "Beat it," she said Manwaring responded "I have and I thought of you." Also, in April 2007, when Bradford asked defendant Manwaring to leave early for a doctor's appointment, he asked her if her boyfriend had given her an STD. Bradford alleges that Manwaring told her if she let him "put [his] dick in [her] it would be the cleanest dick [she] ever had."

Plaintiff-intervenor Deborah Haskins started working in the produce department at Paul's

---

[2] According to the deposition testimony of defendant Connors, plaintiff-intervenor Bradford brought one of the penis pops into the store in March 2007 and placed it on defendant Manwaring's birthday cake.

4

Big M in August 2006. She alleges that on three occasions defendant Manwaring "gave her a hug" on the produce floor and "his hand would go down and touch [her] breasts." On one other occasion, Haskins states that defendant Manwaring came up behind her while she was bent over filling a case and grabbed her right breast. At no point during these four startling encounters does she allege she said anything to him nor does she state he said anything to her. Haskins recalls that she and Andrea Bradford making sexual jokes about produce in the store including carrots and potatoes. Andrea Bradford confirmed making sexual jokes when they would find a "potato that was in the shape of - - I don't know - - an upper torso."

Plaintiff-intervenor Judith Goodrich began employment as a cashier at the store in 2003. Sometime in late 2006 or early 2007, she alleges that defendant Manwaring put his arms around her, hugged her and "pushed his groin" into her. Goodrich states that after this occurred she said "Hey," and defendant Manwaring "just stood there and laughed." In a second incident, Goodrich was standing at the hot food case and while she was bent over stirring something, defendant Manwaring came over and once again "pushed his groin" up against her. She also recalled one incident where defendant Manwaring touched her breast though she did not know if it was intentional. Goodrich alleges that one day at work, defendant Manwaring "asked if [she] was a screamer."

According to plaintiff-intervenor Goodrich there was a "joking sexual atmosphere" in the store that she "walked into when [she] went to work there." This atmosphere continued from the time she was first employed until the time she left. According to plaintiff-intervenor Goodrich "most" of the employees of Paul's Big M, including the three plaintiff-intervenors, participated in the sexual joking and humor at the store. Goodrich testified "it was the nature around the store to

5

joke in that way . . . we all joked . . . we all laughed." It is undisputed that at no time prior to May 2007 did any of the three plaintiff-intervenors complain to defendant Karen Connors about defendant Manwaring's alleged sexual harassment. Plaintiff asserts that defendants had no policy for employees to make complaints of sexual harassment. However, Connors alleges that she terminated a contractor after plaintiff-intervenor Bradford complained that he had sexually harassed her. Andrea Bradford asserts that she feared she would lose her job if she complained to Connors about Manwaring. On the other hand, she also testified that she gave Manwaring a hug one day because she and her boyfriend had gotten into an argument.

In May 2007, defendant Manwaring was involved in a serious incident of sexual misconduct with a teenage employee named Kelsey Rose. The record is not clear on the exact facts of what occurred - it is alleged that he "stuck his tongue in her mouth" while she was talking on the phone with her boyfriend although Manwaring asserts it was "accidental." In any event, he was arrested and later plead guilty in the City of Oswego to Harassment in the Second Degree and Forcible Touching. Defendant Manwaring was sentenced to a one year conditional discharge, 100 hours of community service and a fine. When the charges involving Kelsey Rose were first raised against him, defendant Connors suspended him from employment, albeit with full pay, for 30 days, and ordered him to undergo counseling.

In the wake of the police investigation of the Kelsey Rose incident, a number of other female employees, including the three plaintiff-intervenors, elected to inform defendant Karen Connors that defendant Manwaring had sexually harassed them over an extensive period of time. The employment of all three plaintiff-intervenors ended on June 22, 2007. After twice putting in notice that she was going to resign, defendants asked Bradford to leave while both Haskins and

Goodrich elected to quit on the same day without notice. According to all three women, they could not continue to work at Paul's Big M after defendant Manwaring returned from his suspension, particularly after defendant Connors supported his return.

III.     DISCUSSION

A.     <u>Summary Judgment Standard</u>

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 258 (1986). Irrelevant or unnecessary facts do not preclude summary judgment, even when they are in dispute. *See id.* The moving party bears the initial burden of establishing that there is no genuine issue of material fact to be decided. *See Celotex Corp v. Catrett*, 477 U.S. 317, 323 (1986). With respect to any issue on which the moving party does not bear the burden of proof, it may meet its burden on summary judgment by showing that there is an absence of evidence to support the nonmoving party's case. *See id.* at 325. Once the movant meets this initial burden, the nonmoving party must demonstrate that there is a genuine unresolved issue for trial. *See* Fed. R. Civ. P. 56(e).

Although the trial court must resolve all ambiguities and draw all inferences in favor of that party against whom summary judgment is sought, *see Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 465 (2d Cir. 1989); *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 249 (2d Cir. 1985), the motion will not be defeated by a non-movant who raises merely "metaphysical doubt" concerning the facts or who only offers conjecture or surmise. *See Delaware & H. R. Co.*

7

*v. Consolidated Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).  Indeed, the nonmoving party's opposition may not rest on mere denials of the moving party's pleading, but "must set forth specific facts showing there is a genuine issue for trial."  *See* Fed. R. Civ. P. 56(e).  The standard for granting summary judgment mirrors the directed verdict standard under Rule 50(a) which requires the court to grant a directed verdict where there can be but one reasonable conclusion.  *See Anderson,* 477 U.S. at 250.  "It is a gratuitous cruelty to parties and their witnesses to put them through the ordeal of a trial when the outcome is foreordained."  *See Mason v. Continental Ill. Nat'l Bank*, 704 F.2d 361, 367 (7th Cir. 1983).  It is with these considerations in mind that the Court addresses the parties' respective motions for summary judgment.

B.      <u>Defendants' Motion for Summary Judgment</u>

1.      Dismissal of Title VII Claims Against Individual Defendants

Defendants Manwaring and Connors seek dismissal of the Title VII claims against them on the ground that the statute applies as a matter of law only to "employers" and not individual defendants.  *See* 42 U.S.C. § 2000e(b); *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313 (2d Cir. 1995). As noted correctly by plaintiff and plaintiff-intervenors, there are no Title VII claims against the individual defendants in the original complaint.  In the amended complaint in intervention, however, the individual defendants are not "tilting at windmills" when they seek dismissal of the Title VII claims against them.  The third, fourth, eleventh, twelfth, nineteenth, and twentieth causes of action contain collective claims under Title VII against "defendants" all of which are subject to dismissal as against the individual defendants.  *See Patterson v. County of Oneida*, 375 F.3d 206, 221 (2d Cir. 2004).

8

2.     Existence of a Hostile Work Environment

Defendants argue in one breath in their reply memorandum that plaintiff has not presented proof that a hostile work environment existed at Paul's Big M.  In the next sentence, defendants assert however, that they "immediately acted as soon as such knowledge existed" - which begs the question - knowledge of what?  Knowledge of a hostile work environment that they claim did not exist?  The Court finds after review of the entire record that at the very least there are material questions of fact as to whether a hostile work environment existed at Paul's Big M.  Plaintiff and plaintiff intervenors have presented sufficient proof of defendant Manwaring's unwelcome comments and sexual advances which allegedly occurred with enough frequency and severity to potentially constitute an abusive working environment.  *See Galloway v. Gen. Motors Serv. Parts Operations*, 78 F.3d 1164.[3]

3.     Availability of Affirmative Defense

Defendants argue they are entitled to what is commonly known as the *Burlington/Faragher* affirmative defense based on Karen Connor's alleged lack of knowledge of

---

[3]

The Court also notes evidence in the record which suggests there was a general environment of physical contact and sexual humor in the workplace at Paul's Big M and that all three of the plaintiff intervenors participated in it along with defendant Manwaring.  As noted above, defendant Manwaring gave Andrea Bradford a box of penis lollipops for Christmas in 2006 and she saved one to put on his birthday cake in the spring in 2007.  Bradford also acknowledged giving Manwaring a hug when she got into a fight with her boyfriend.  Plaintiff intervenor Haskins acknowledged that insofar as sexual humor in the workplace she and Bradford joked about produce - carrots and potatoes - that was "weird looking."  Judith Goodrich slapped defendant Manwaring on the butt one day when he was bent over "because we used to joke around all the time."  According to Goodrich, this gesture just made Manwaring laugh.  She also "aimed" her metal tongs at an unidentified part of his body on another occasion which also caused him to laugh.  As stated by Goodrich "we all joked, we all laughed" about the "sexual humor" in the store. And no one complained.  Indeed, Goodrich indicated her concern that the "crude sexual joking atmosphere" at Paul's Big M was not appropriate for the underage teenage employees who worked in the store.

9

the harassment until May 2007.  *See Burlington Indus. Inc. v. Ellerth*, 524 U.S. 742 (1998); *Faragher v. Boca Raton*, 524 U.S. 775 (1998).  This defense, which examines the reasonableness of the conduct of both the employer and the victimized employee, is only available to an employer when no "tangible employment action,[4]" is taken against a complaining employee. *Leopold v. Baccararat, Inc*., 239 F.3d 243, 245 (2d Cir. 2001).  To sustain its burden of proof on this defense, the employer must demonstrate it: a) exercised reasonable care to prevent and correct promptly any sexually harassing behavior; and b) that the plaintiff employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise.  *See id.*

No party - including plaintiff intervenors - has addressed the issue of why defendants would be entitled to the benefit of this affirmative defense in the particular case of Andrea Bradford, who was terminated from her position with the company after admittedly twice giving notice of her intention to quit.  Plaintiff and plaintiff intervenors contend that defendants are not entitled to assert the defense because they allege Allen Manwaring's position at Paul's Big M was "equivalent to a chief operating officer."  *See Faragher*, 524 U.S. at 789 (where harasser is "within that class of an employer organization's official's who may be treated as the organization's proxy," such as the president, owner, partner or coroporate officer, the corporate employer is auotmatically liable and cannot take advantage of the affirmative defense which is only available when the harasser is a lower level supervisor.)  Plaintiffs argue Manwaring

---

[4]

"Tangible employment action" refers to "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington*, 524 U.S. at 761.

"exercised overwhelming control of defendant's operations, including telling Karen Connors what to do" and "drew a salary that exceeded that of Karen Connors." As such, plaintiffs contend Manwaring was at a sufficiently high level in the company to be treated as defendant's proxy.

While the Court acknowledges that there is evidence in the record which suggests defendant Manwaring was overwhelmingly responsible for managing day-to-day operations of the business at Paul's Big M, by no means does that demonstrate that he was a president, owner, partner or corporate officer of the company. There is no factual dispute concerning defendant Manwaring's position at Paul's Big M. He was a General Manager. Defendant Karen Connors testified that she hired Manwaring to "run the store" and consulted with him on matters of hiring, firing, purchasing, etc.. There is no evidence in the record which demonstrates that he had an ownership interest in the company. Aside from plaintiffs' hyperbolic assertions, there is nothing in the record which suggests that he "told" Karen Connors how to run her business. And although defendant Manwaring's weekly salary may have been higher than that of Karen Connors, she acknowledged in her deposition that she received a substantial annual bonus at the discretion of her father. Based thereupon, plaintiffs' assertion that the *Burlington/Faragher* affirmative defense is unavailable to them based upon Manwaring's position in the company falls flat.

4.    Viability of *Burlington/Faragher* Defense

Defendant argues that it is entitled to the *Burlington/Faragher* defense merely because it is undisputed that Karen Connors had no knowledge of the alleged harassment until May 2007. Thus, according to defendant, because defendant did not know about the problem, it cannot be charged with failing to remedy it.

Regarding the first requirement of the defense, plaintiff and plaintiff intervenors

11

argue that defendants have not produced any evidence that they exercised reasonable care to prevent the sexually harassing behavior.  They contend defendant had no sexual harassment policy, it conducted no sexual harassment training, and had no complaint procedure.  Indeed, plaintiffs point out that defendant had no employee handbook until after plaintiff intervenors complained about defendant Manwaring and it was Manwaring who was later given the responsibility of creating a handbook with a sexual harassment policy.  Plaintiff has submitted an affidavit from the publisher of the handbook which states that Manwaring asked that no date be included on the handbook.

Defendants assert that a "stated policy" existed with respect to employee complaints.  According to defendant Karen Connors, because Paul's Big M is a small business where she and the managers are "physically engaged with employees on a daily basis," an "open door" policy has always existed with respect to complaints by employees.  Karen Connors averred that each of the plaintiff intervenors along with all other employees were and are advised of this policy at the time of hire.  In the case of plaintiff intervenor Bradford, defendant Karen Connors asserts that not only was Bradford well aware of the company's sexual harassment policy, she used it to complain previously about a contractor who was then terminated.

Although plaintiffs cite defendant's lack of a written handbook and harassment policy as evidence per se of liability in this case, the law is clear that employers must take only "reasonable steps" to prevent harassment and to remedy harassment quickly if it does occur.  *Leopold v. Baccarat, Inc*., 2000 WL 174923 (S.D.N.Y. 2000).  *Burlington* and *Faragher* left it to the lower federal courts to flesh out whether specific anti-harassment policies are sufficient under this standard:

> One way that an employer can prove reasonable steps is by producing a detailed, written anti-harassment policy and complaint procedure that include a by-pass provision, an assurance that there will be no repercussions for complaints, a promise of severe punishment for harassers and incentives to encourage employees to report harassment. But such a policy is not necessary in every case. In a very small company, for example, an oral statement that harassment will not be tolerated and an open door policy on the part of management may be sufficient. The law is very clear that any reasonable policy will do.

*Id.* In the present case, the Court finds that given the size of the company and the nature of the business, defendant's "open door" policy of employee complaints might have been sufficient to have alerted employees concerning their rights to bring concerns to management. However, defendant has not presented sufficient evidence that its oral policy of telling employees that complaints could be brought to a manager or owner on an "open door" basis specifically included a statement that sexual harassment would not be tolerated. Although Karen Connors avers that Andrea Bradford complained about being sexually harassed by a contractor who was later terminated, she provides no facts or details in her affidavit regarding this matter. The bare allegation of a prior complaint resolved in an employee's favor, standing alone, is not sufficient to establish that defendant had a reasonable anti-harassment policy in place prior to plaintiff intervenors' complaints about Manwaring.

Karen Connors also states that when she was informed about defendant Manwaring's allegedly harassing behavior, he was immediately suspended and directed to attend counseling. Plaintiffs counter, however, that Manwaring was paid while he was on suspension and defendant Karen Connors never followed up to determine if he went to counseling or directed him to obtain a report or release from his counselor. Indeed, defendant Connors acknowledged she did not know the name of the counselor Manwaring went to, what type of counseling he went to or how

13

many sessions he attended.

The Court notes that a closer examination of the record reveals that Manwaring's suspension and order to attend counseling was not related to the complaints of the plaintiff-intervenors but rather, was a direct result of the serious impropriety he took with an underage employee, Kelsey Rose. In spite of the multiple complaints by female employees which followed the incident with Kelsey Rose, and Manwaring's arrest and prosecution for assault, he was welcomed back to the company following his suspension.

Insofar as the second element of the defense, defendant must also present evidence that plaintiff intervenors "unreasonably failed to take advantage of preventative or corrective opportunities provided by the employer to avoid harm otherwise." *Burlington*, 524 U.S. at 765. Connors makes the conclusory assertion that each of the plaintiff intervenors had "raised various issues with management over the years" and "knew how, to whom and when to complain." Assuming the company had a bona fide sexual harassment policy - even an oral one - which employees were aware of, defendant must still prove that plaintiff intervenors elected not to take advantage of it. According to Connors, plaintiff intevenors chose not to complain because they were actively involved in participating in the "workplace sexual conduct." Plaintiff intervenors counter that they did not complain because they were "afraid" of losing their jobs. The Court notes, however, that such subjective apprehensions have not been held sufficient assuming defendant can establish that a sufficient complaint procedure was available to employees being subjected to harassment:

> A credible fear must be based on more than the employee's subjective belief. Evidence must be produced to the effect that the employer has ignored or resisted similar complaints or has taken adverse actions against employees in response to such complaints. Here, [plaintiff]

14

> did not come forward with any such evidence, but instead simply
> asserted her apprehension that she would be fired for speaking up, and
> claimed generally that a co-worker's vague and ambiguous complaint
> was not taken seriously. Such conclusory assertions fail as a matter
> of law to constitute sufficient evidence to establish that her fear was
> "credible" - that "her complaint would not be taken seriously or that
> she would suffer some adverse employment action."

*Leopold*, 239 F.3d at 247 (citing *Caridad v. Metro-North Commuter R.R.*, 191 F.3d 283, 299 (1999).

Given the paucity of evidence in the record concerning exactly what defendant's complaint policy was prior to plaintiff intervenors raising their complaints against defendant Manwaring, the Court finds there are questions of fact as to whether defendant took reasonable steps to prevent

sexually harassing behavior in its workplace. Moreover, there are equally compelling questions of fact which remain concerning whether the plaintiff-intervenors failed to avoid harm by complaining about Manwaring's alleged offensive conduct prior to May 2007. Based thereupon, defendant's motion for summary judgment must be denied.

C.     PLAINTIFFS' CROSS-MOTION

The Court finds it unnecessary to analyze plaintiffs' cross-motion in detail since the same questions of fact which prevent granting summary judgment on defendant's motion prevent it from granting summary judgment on plaintiffs' cross-motion.

15

IV.     CONCLUSION

Based on the foregoing, defendant's motion for summary judgment dismissing plaintiff's complaint is DENIED and plaintiffs' cross-motion dismissing defendant's affirmative defense is DENIED.

IT IS SO ORDERED.

Date: September 22, 2010

_____
Norman A. Mordue
Chief United States District Court Judge