UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,

                               Plaintiff,

          vs.                                 5:08-CV-1019
                                              (NAM/DEP)

KARENKIM, INC., D/B/A/ PAUL'S BIG M,

                               Defendant.
_____

ANDREA BRADFORD, JUDITH GOODRICH
and DEBORAH HASKINS,

                               Plaintiff-Intervenors,

          vs.

KARENKIM, INC., D/B/A/ PAUL'S BIG M
GROCER and KAREN CONNORS and ALLEN
MANWARING, individually and as aiders and abettors,

                               Defendants.
_____

APPEARANCES:                             OF COUNSEL:

United States Employment                Markus L. Penzel, Esq.
   Opportunity Commission             Ami T. Sanghvi, Esq.
John F. Kennedy Federal Building
Government Center, Room 475
Boston, Massachusetts 02203-0506
*Attorneys for Plaintiff*

Satter & Andrews, L.L.P                Matthew E. Bergeron, Esq.
McCarthy Building
217 South Salina Street
Syracuse, New York 13202
*Attorneys for Plaintiff-Intervenors*

Antonucci Law Firm                     David P. Antonucci, Esq.

The Bonadio Building
12 Public Square
Watertown, New York 13601
*Attorneys for Defendants*

**Norman A. Mordue, Chief U.S. District Judge**

**MEMORANDUM-DECISION and ORDER**

I.      INTRODUCTION

This case has been the subject of previous Memorandum-Decision and Orders and was tried before this Court and between January 3 - 20, 2011.  The case resulted in a jury verdict in favor of plaintiff EEOC on behalf of claimants and Plaintiff-Intervenors.  Familiarity with the facts and procedural history is assumed.  Presently before the Court are three motions.  Plaintiff EEOC has filed two of these motions.  The first seeks to amend the judgment obtained after trial to reflect Title VII's cap on punitive damages.  The second seeks injunctive relief in addition to the jury's award of compensatory and punitive damages for the claimants and Plaintiff-Intervenors.  The third motion has been filed by counsel for Plaintiff-Intervenors and seeks an award of attorneys fees and costs.

II.     DISCUSSION

A.      Amendment of the Judgment

Title VII authorizes the award of both compensatory and punitive damages but provides a cap on the total amount of damages recoverable based on employer size.  *See* 42 U.S.C. § 1981a (a).  Specifically, the statute states as follows:

> In an action brought by a complaining party under section 706 or 717 of the Civil Rights Act of 1964 . . . against a respondent who engaged in unlawful intentional discrimination . . . prohibited under section 703, 704, or 717 of the Act . . . the complaining party may recover compensatory and punitive damages as allowed in subsection (b), in

addition to any relief authorized by section 706(g) of the Civil Rights
Act of 1964 . . . from the respondent.

Section 1981a(b) provides:

The sum of the amount of compensatory damages awarded under this
section for future pecuniary losses, emotional pain, suffering,
inconvenience, mental anguish, loss of enjoyment of life, and other
nonpecuniary losses, and the amount of punitive damages awarded
under this section, shall not exceed, for each complaining party -- (A)
in the case of a respondent who has more than 14 and fewer than 101
employees in each of 20 or more calendar weeks in the current or
preceding calendar year, $ 50,000 . . . .

All but claimant Lorraine Baldwin received compensatory and punitive damages in total

amounts exceeding the $50,000 cap.  No party objects to the motion by plaintiff EEOC to amend

the judgment to reflect Title VII's cap on damages.  Therefore, the judgment will be amended to

reduce the amounts awarded by the jury to reflect the impact of the cap as follows:

Emily Anderson: $50,000.00 (consisting of $750 in compensatory damages and

$49,250.00 in punitive damages);

Andrea Bradford: $51,900.00 (consisting of $1,900 in compensatory damages and

$50,000.00 in punitive damages);[1]

Amanda Cole: $50,000.00 (consisting of $2,050 in compensatory damages and $47,950.00

---

[1]

The damages awarded Andrea Bradford, Judith Goodrich, and Deborah Haskins may properly
exceed the amount of the cap because the excess, consisting of their compensatory damages
award, can be attributed to their state court claims.  Although there are statutory caps on
compensatory damages under Title VII, there are no such limits under the HRL. *See e.g. Funk
v. F & K Supply, et al.*, 43 F. Supp. 2d 205, 225 (N.D.N.Y. 1999).  Where a jury awards
compensatory damages in a case where both Title VII and HRL violations are found, and
those damages are in excess of the Title VII caps, the jury award [will] be allocated under the
liability theory that provides plaintiff the most complete recovery." *Id.*  In addition, under
Title VII, an award solely of punitive damages is permissible. *See Cush-Crawford v. Adchem
Corp.*, 271 F.3d 352 (2d Cir. 2001).

in punitive damages);

Judith Goodrich: $50,950.00 (consisting of $950 in compensatory damages and $50,000.00 in punitive damages);

Deborah Haskins: $50,775.00 (consisting of $775 in compensatory damages and $50,000.00 in punitive damages);

Rachel (Sivers) Johnson: $50,000.00 (consisting of $500 in compensatory damages and $49,500.00 in punitive damages);

Anna Miller: $50,000.00 (consisting of $1,230.00 in compensatory damages and $48,770.00 in punitive damages);

Abigail Murray: $50,000.00 (consisting of $675 in compensatory damages and $49,325.00 in punitive damages);

Lorraine (Baldwin) Warren: $23,724.00 (consisting of $250 in compensatory damages and $23,474 .00 in punitive damages); and

Meghan Whitmarsh: $50,000.00 (consisting of $1,000 in compensatory damages and $49,000.00 in punitive damages).

B.      Injunctive Relief

Plaintiff EEOC has presented an application to the Court for extensive injunctive relief to prevent future discrimination and harassment by defendant KarenKim.  The full measure of the injunctive relief sought by plaintiff EEOC is as follows:

> 1.      KarenKim its managers, officers, agents, parent organizations, successors, purchasers, assigns, subsidiaries, affiliates, and any corporation or entity into which KarenKim may merge or with which KarenKim may consolidate are enjoined from engaging in sex discrimination including by creating or maintaining a hostile work environment on the basis of sex.  KarenKim, its managers, officers,

agents, parent organizations, successors, purchasers, assigns, subsidiaries, affiliates, and any corporation or entity into which KarenKim may merge or with which KarenKim may consolidate, are further enjoined from retaliating against any individual for asserting her or his rights under Title VII or otherwise engaging in protected activity, such as by complaining of discrimination, opposing discrimination, filing a charge, or giving testimony or assistance with an investigation or litigation, including, but not limited to, participating in this matter in any way including by giving testimony.

<u>Employment of Allen Manwaring and Posting</u>

2.      KarenKim, its managers, officers, agents, parent organizations, successors, purchasers, assigns, subsidiaries, affiliates, and any corporation or entity into which KarenKim may merge or with which KarenKim may consolidate, are enjoined from: (a) rehiring Allen Manwaring; (b) employing and/or compensating Allen Manwaring in any capacity, whether as an employee, independent contractor, or consultant; (c) allowing Allen Manwaring to provide any services, whether paid or unpaid, to KarenKim or otherwise engage in any activities related to the store; and (d) allowing Allen Manwaring to enter KarenKim's building at 276 West 1st Street, Oswego, New York, or the surrounding premises.

3.      Notwithstanding the above paragraph, KarenKim may purchase produce from Allen Manwaring, provided that KarenKim is prohibited from permitting Allen Manwaring to enter KarenKim's building at 276 West 1st Street, Oswego, New York.

4.      KarenKim will post a notice, a reduced-size copy of which is attached as Exhibit A, with a photograph of Allen Manwaring included in the notice, in its break room informing employees of their obligation to contact the Independent Monitor and/or EEOC if they see Allen Manwaring in the building located at 276 West 1st Street, Oswego, New York or on the surrounding premises. The notice will also summarize the provisions of this Judgment and Order for Injunctive Relief and will state that it is "So Ordered" by this Court. The Notice will be printed on poster size stock of 18" x 24" with a 4" by 6" photograph of Allen Manwaring included.

<u>Independent Monitor</u>

6.      KarenKim will give its full cooperation to the Independent Monitor in the performance of the Independent Monitor's

responsibilities under the Judgment and Order for Injunctive Relief and will pay all costs, fees, and expenses of the Independent Monitor. KarenKim will give the Independent Monitor full access to KarenKim's officers, managers, supervisors, employees, vendors, contractors, and documents and records related to the performance of the Independent Monitor's responsibilities under the Judgment and Order for Injunctive Relief. KarenKim will immediately inform the Independent Monitor of any allegations, reports or suspected incidents of sexual harassment or retaliation.

## Sexual Harassment Policy

7.      Within seven days of EEOC's approval of an Independent Monitor, KarenKim will amend the sexual harassment policy currently in Paul's Big M "Employee Handbook" as Section 207 to include the following: (a) the name, address, and telephone number of the Independent Monitor; (b) a provision that any complaints of sexual harassment must be made to the Independent Monitor; (c) a provision that complaints can also be made to supervisors and managers in addition to the President of KarenKim, and that these supervisors and managers must then report the complaints to the President of KarenKim and the Independent Monitor; (d) a provision that the complaining employee will be notified in writing of the results of any investigation within thirty days; and (e) a provision amending its provision prohibiting retaliation to include retaliation against any individual for asserting her or his rights under Title VII or otherwise engaging in protected activity, such as by complaining of discrimination, opposing discrimination, filing a charge, or giving testimony or assistance with an investigation or litigation. KarenKim must distribute the amended policy to each current employee within fourteen days of EEOC's approval of the Independent Monitor. KarenKim will distribute the amended policy to any new employees within seven days of hire. KarenKim must also immediately post the new policy in its break room in a manner easily visible to all employees and immediately forward a copy of the amended policy to EEOC and the Independent Monitor.

## Distribution of Notice Concerning Allen Manwaring

8.      Within seven days of agreement on the identity of the Independent Monitor, KarenKim will deliver to each of its current employees a letter in the form attached as Exhibit B, signed by Karen Connors, along with a wallet-sized card containing the addresses and phone numbers for the Independent Monitor and EEOC.

9.      Within seven days of the hiring of any new employee, KarenKim will give a copy of Exhibit B and the wallet-size card to the new employee.

10.      Each employee given a copy of Exhibit B and the wallet-size card must sign an acknowledgement of receipt. KarenKim will maintain such receipts and forward them to EEOC every six months from January 19, 2011, the anniversary of the verdict, along with a current list of employees containing contact (address and telephone) information.

<u>Training</u>

11.      KarenKim will conduct a two hour training session for all management and supervisory employees on the requirements of Title VII's prohibitions against sexual harassment and the requirements and prohibitions of this Judgment and Order for Injunctive Relief.  The training must be completed within 60 days of the entry of this Judgment and Order for Injunctive Relief.  The training will also be provided to all new management and supervisory employees within 30 days of their hire or promotion.  KarenKim must maintain attendance sheets identifying each person who attended each training session, and must forward a copy of the attendance sheets to EEOC along with a current list of employees within seven days of each training session.  KarenKim will provide all management and supervisory employees with one hour of refresher training on the requirements of Title VII's prohibitions against sexual harassment annually on the anniversary of this Judgment and Order for Injunctive Relief's effective date.

12.      KarenKim must also conduct a training session for all non-management employees on the requirements of Title VII's prohibitions against sexual harassment and the requirements and prohibitions of this Judgment and Order for Injunctive Relief.  The training sessions will be completed within 60 days of the entry of this Judgment and Order for Injunctive Relief.  Such training will also be provided to all new non-management employees within 30 days of their hire.  KarenKim must maintain attendance sheets identifying each person who attended each training session, and must forward a copy of the attendance sheets to EEOC along with a copy of KarenKim's current employee roster within seven days of each training session.

13.      All training referenced above must be coordinated and provided by the Independent Monitor.  Within fourteen days of the

entry of this Judgment and Order for Injunctive Relief, KarenKim must provide EEOC with the Independent Monitor's proposed written materials and training outline. EEOC will then approve or disapprove of the training materials. Approval may not be unreasonably withheld by EEOC. If EEOC disapproves of the proposed training materials, it will work with the Independent Monitor to produce suitable training materials.

14.     After EEOC's approval of the training materials, KarenKim must provide EEOC with fourteen days notice and receive EEOC approval before making any changes to the written materials and training outline.

<u>Monitoring</u>

15.     EEOC has the right to monitor and review compliance with this Judgment and Order for Injunctive Relief. Accordingly:

16.     Every six months for the duration of this Judgment and Order for Injunctive Relief, and one month before the expiration of this Judgment and Order for Injunctive Relief, KarenKim must submit written proof via affidavit to EEOC that it has complied with each of the requirements set forth above. Such proof must include, but need not be limited to, an affidavit by a person with knowledge establishing: (a) the completion of training; (b) that Exhibit A remains posted and that the letters to employees were delivered; (c) that the sexual harassment policy has been distributed and remains posted in accordance with this Judgment and Order for Injunctive Relief; and (d) that it has complied with the injunctions in paragraphs 2 through 4.

17.     For the duration of this Judgment and Order for Injunctive Relief, KarenKim must create and maintain such records as are necessary to demonstrate its compliance with this Judgment and Order for Injunctive Relief and 29 C.F.R. §1602 et seq. and maintain an updated EEO poster in compliance with 42 U.S.C. § 2000e-10.

18.     EEOC, or its designee, has the right to: (a) review any and all documents relevant to the relief provided in this Judgment and Order for Injunctive Relief; (b) without advance notice, interview employees, managers, supervisors and contractors regarding compliance with this Judgment and Order for Injunctive Relief, and (c) conduct unannounced inspections of the premises at 276 West 1st Street, Oswego, New York, regarding compliance with this

8

Judgment and Order for Injunctive Relief.

19.   Any report or notification to EEOC required of KarenKim under this Judgment and Order for Injunctive Relief must be made by overnight or certified mail to Markus L. Penzel, Trial Attorney, EEOC, JFK Federal Bldg., Room 475, Boston, MA 02203.

Successors

20.   This Judgment is binding upon KarenKim's parent organizations, successors, assigns, subsidiaries, affiliates, purchasers and any corporation or entity into which KarenKim may merge or with which KarenKim may consolidate. Before any merger, sale, consolidation, transfer of ownership or corporate reorganization, KarenKim will provide written notice of this lawsuit, together with a copy of the Complaint and this Judgment and Order for Injunctive Relief, to any potential purchaser of KarenKim's business, or purchaser of all or a portion of KarenKim's assets, and any other potential purchaser, successor, assign, corporation or entity with which KarenKim may merge or consolidate. KarenKim will provide written notice to EEOC 14 days before any sale, assignment, succession, acquisition, merger or consolidation affecting KarenKim.

Term of Injunctive Relief

21.   This Injunctive Relief will remain in effect for ten years from the date of entry. The court will retain jurisdiction to enforce the terms of this Judgment and Order for Injunctive Relief.

According to the EEOC, a district court has broad discretionary powers to craft an injunction which will bar employment discrimination likely to occur in the future. Indeed, the EEOC argues that this Court essentially has **no** discretion to deny injunctive relief completely given that defendant's liability has already been established pursuant to Title VII. *See United States v. Gregory*, 871 F.2d 1239, 1246 (4th Cir. 1989), *Collins v. Suffolk Co. Police Dep't*, 349 F. Supp.2d 559, 562 (S.D.N.Y. 2004) (citing *Gunby v. Pennsylvania Elec. Co.*, 840 F.2d 1108, 1122 (3d Cir. 1988)). The Court finds neither *Gregory* nor *Collins* applicable to the facts at bar, however.

9

In *Gregory*, the complaint alleged that the defendant sheriff followed and continued to follow a practice of refusing to consider women for deputy sheriff positions in violation of Title VII. *See* 871 F.2d at 1240. The case was tried without a jury after which the district court dismissed the case. *See id.* The Fourth Circuit twice remanded the case for further proceedings prior to reversing a third time because the district court applied an incorrect legal standard in assessing statistical evidence presented by the government and did not accord sufficient weight to admissions made by the defendant sheriff and the testimony of the complainants. *See id.* In its third opinion concerning the case, the Fourth Circuit addressed the government's request for injunctive relief prospectively as it had not been decided by the district court. *See* 871 F.2d at 1246. The Circuit noted the well established principle that Title VII remedies have not been limited to correcting only ongoing discriminatory policies, but that district courts clearly have the authority to grant injunctive relief even after apparent discontinuance of unlawful practices. *See id.* (citing Title VII, 42 U.S.C. §2000e-5(g), which states in pertinent part: "if the court finds that the respondent **has** intentionally **engaged in** or is intentionally engaging in unlawful employment practice ... [the practice may be enjoined] ....") (emphasis in original). *Id.*

However, in *Gregory*, the Circuit Court found that the authority granted to the district court was especially appropriate because the "record [did] not demonstrate a total cessation of the unlawful practices" alleged in the complaint. *Id.* Indeed, while the original defendant sheriff in the case had suffered defeat upon attempting to be reelected and had been replaced by another administration, the discriminatory practice of failing to hire women as deputies continued. *See id.* at 1247. Moreover, not only had the superceding defendant sheriff continued to refuse hire women as deputies, he actually eliminated the female civil process server position which one of

10

the complainants had occupied under his predecessor.  *See id.*

      In *Collins*, the other case relied on by the EEOC herein, the plaintiff police officer alleged that she suffered discrimination and retaliation on account of her race and gender in violation of Title VII.  *See* 349 F. Supp.2d at 561.  A jury awarded plaintiff $79,500 in compensatory damages and $150,000 in punitive damages.  *See id.*  In connection with her post-trial request for injunctive relief, the district court noted that such relief was appropriate "if 'the moving party demonstrates there is some cognizable danger of recurrent violations.'" *Id.* at 563 (quoting *Aquilino v. Univ. of Kansas*, 109 F. Supp.2d 1319, 1322 ( D. Kan. 2000) (quoting *EEOC v. Gen. Lines, Inc*., 865 F.2d 1555, 1565 (10th Cir. 1989) ("The likelihood of future violations is inferred from the totality of the circumstances, including the commission of past illegal conduct.")).  In support of her request for injunctive relief, the plaintiff in *Collins* submitted an affidavit that detailed a "dramatic change" in the medical reports of the County's doctor's following her trial regarding her ability to return to work after suffering a "line of duty" injury to her back and neck. *See id.*  The court highlighted the Second Circuit's holding in *Malarkey v. Texaco, Inc*., 983 F.2d 1204, 1215 (2d Cir. 1993) concerning injunctions prohibiting future retaliation:

> It hardly seems drastic to require [the defendant] to obey the law as set forth in the ADEA with respect to [the plaintiff]. It is difficult to discern what heavy burden the order places on the employer: it covers a single employee in a company employing nearly two thousand in its corporate headquarters alone. The injunction does not require [the defendant] to change employment practices, reorganize departments, or rewrite official procedures. Moreover, we do not regard it as superfluous to subject an employer found to have discriminated to the district court's contempt powers, were it to repeat its retaliatory conduct.

      In contrast to the injunctive relief at issue in *Collins*, the Court notes that the proposed injunctive order submitted by plaintiff EEOC in this case would place a substantial burden on the

11

defendant employer, would cover every present and future employee for a period of ten years, requires the defendant to alter drastically its employment practices and hire an independent monitor whom, together with the EEOC, will review and critique any present or future employment practices with respect to sexual harassment.  Unlike the injunction in *Collins*, the injunction proposed by the EEOC herein **does** require the employer to change employment practices, reorganize departments and rewrite official procedures.

This Court which presided over a nearly three week trial in this case is aware of the following facts which arose in the course of testimony during said trial: defendant Allen Manwaring is no longer employed by defendant KarenKim, Inc., nor are any of the claimants or Plaintiff-Intervenors.  While it was undisputed that there was no written policy or handbook available for employees concerning sexual harassment during much of the time period at issue during the trial, the defendant store has since created an employee handbook which includes a sexual harassment policy.  A copy of the handbook is given to each new employee upon hire. Aside from Allen Mawaring, there is no evidence that any other employee or manager of defendant KarenKim, Inc. was responsible for subjecting any employee to unwelcome or unlawful conduct.

Nevertheless, in spite of the record which suggests that the discriminatory and unlawful actions in this case were isolated instances involving a manager who is no longer employed by the company and employees who are no longer employed by the company, occurring during a period when the company did not have clearly established anti-harassment policies, the EEOC insists that "there is no evidence that Karenkim will not allow a sexually hostile work environment to recur."  Indeed, the EEOC insists that because defendant Karen Conners and Manwaring remain

engaged to be married, there is a likelihood he may be rehired or be allowed on the premises of the store.  Moreover, the EEOC insists that given the continuing romantic relationship between Manwaring and Conners, "unless Manwaring is barred from any role with KarenKim and the employees are properly trained and given a neutral avenue to complain, the hostile environment is likely to resurface."  The EEOC contends that Allen Manwaring "has continued to be involved in the operations of the store in a decision-making role."  To wit, the EEOC states that Manwaring has "given advice to managers at the store and even informed one manager that she was terminated."[2]

It is well settled that a court may enjoin a defendant from further unlawful practices "if the moving party demonstrates that there exists some cognizable danger of recurrent violations." *Collins*, 349 F. Supp.2d at 563 (citations omitted).  In this case, the EEOC is attempting to flip the burden of proof by claiming that KarenKim has the burden to show it will not allow further harassment of employees in the future.  In support of this claim, the EEOC cites KarenKim's

---

[2]

Elanora Boyke's affidavit states that even though she knew Allen Manwaring was no longer employed by KarenKim, she called him on 2 or 3 occasions during some undisclosed period of time to ask questions about the produce department.  Ms. Boyke also said that she asked Manwaring occasionally for advice on how to handle a difficult employee and that there was another manager who also called Allen if he had a problem in the store and there was no one there to handle it or help with it.  Ms. Boyke averred that Dianne Vickery, another manager in the store was aware of the fact that she had called Manwaring to ask advice and did not either discipline for having done so or tell her not to do it again.  Upon attempting to return to work after a short medical leave, Ms. Boyke states she called the store to find out about her schedule and was told she needed to speak to Karen Conners.  When she attempted to reach Karen Connors, she was unsuccessful, so she called Manwaring who told her that he would contact Karen.  Boyke states that moments later, Manwaring called her back to say that she was being fired because she had not answered her phone the previous Wednesday when she was home sick.  Manwaring also told Boyke she should contact Karen Conners.  Boyke recounts that she later spoke to Karen Conners to verify whether she was being fired and Conners confirmed this fact.

alleged reluctance to act on long-standing complaints regarding Manwaring's behavior before finally terminating his employment in May 2010 and alleged lies told on the witness stand by KarenKim employees in an attempt to cover up the real reason for Manwaring's termination.  The EEOC also asserts in conclusory fashion that the defendant KarenKim "continues" to fail to take responsibility for almost ten years of harassment and that it failed to show "contrition" for its unlawful conduct based on the legal and factual defenses raised at trial.

The Court finds the EEOC's arguments specious and the evidence relied on in support of its claims tenuous or non-existent.  Indeed, there is no indication that the personal relationship between Karen Conners and Allen Manwaring will result in the resurrection of the hostile work environment that existed at KarenKim prior to his termination.  In the first instance, Manwaring is not presently employed by the company nor are any of the complaining parties.  Given the existence of an anti-harassment policy at KarenKim and the company's now keen awareness of the issue, the Court is hard-pressed to imagine that should complaints by employees concerning sexual harassment or employment discrimination of any other kind arise in the future, that KarenKim will not take them seriously.  At the present time, however, there is no indication, much less evidence, that such conduct is likely to occur.  Moreover, the Court is at a loss to understand EEOC's pressing need to prevent - in addition to Manwaring's future employment by KarenKim - his very presence on the premises of the store.  Indeed, the Court finds that the notion of having Manwaring's picture posted in the store and the notice of his official banishment being printed on cards with a "hotline number" given to employees in the event he is ever spied on the premises calls to mind a manner of punishment far beyond the nature and gravity of this case.

Ms. Boyke certainly does not state that she was told by anyone at KarenKim to call

Manwaring.   Her affidavit demonstrates nothing beyond the fact that she made a voluntary choice as a manager to call Manwaring about store concerns knowing he was no longer employed by the company, but clearly someone she considered to be a good and reliable source of advice. As to the EEOC's claim that Manwaring informed her she was fired, that is literally true. However, as Ms. Boyke acknowledged in her affidavit, she was told by the store to contact Ms. Conners and when she was unsuccessful in doing so, she made the choice to call Manwaring who called Conners on her behalf and relayed a message.  It is clear though that Boyke did not rely on Manwaring's information regarding being fired until she later confirmed that she had indeed been fired by talking personally with Karen Conners.

The only evidence submitted by the EEOC which even remotely suggests the possibility of ongoing harassment by anyone at KarenKim is the declaration submitted by claimant Lorraine Warren in reply to defendants' opposition to EEOC's motion.  Therein, Ms. Warren recounts an incident which occurred in early January 2011 when she and her husband went to Paul's Big M to cash her New York State income tax refund check.  Ms. Warren claims that when she and her husband approached the front office where checks are generally cashed, she was told by a woman with shoulder length reddish hair whom she believed to be Dianne Vickery that she was "no longer allowed in the store" and that she had to "leave immediately."  Ms. Warren's husband was also told that he could not cash the check and that he was no longer permitted in the store "because he was [her] husband" and he was asked to leave.  Ms. Warren stated that she found this incident to be very embarrassing because there were other customers who overheard the entire exchange.  She avers that she "believe[s] that [she] was thrown out of the store and am no longer allowed to shop there because I participated in this case and testified against the store."

15

The Court notes, however, that the incident set forth in Ms. Warren's declaration is not a basis on which to make a finding that ongoing acts of retaliation prohibited by Title VII are occurring or will likely occur in the future against the complaining parties in this case. In the first instance, Ms. Warren is no longer an employee of the store and was not denied any privilege or condition of employment. The Court recognizes, however, that this factor alone is not dispositive since the law is settled that former employees have a right to the protections afforded by Title VII. *See Pantcheko v. C.B. Dolge Co., Inc.*, 581 F.2d 1052, 1055 (2d Cir. 1978). The fact remains, however, that the alleged refusal of defendant KarenKim to cash a check for Ms. Warren does not contemplate any of the rights or privileges envisioned by Title VII and thus cannot constitute retaliation as a matter of law. It is true that in *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67-68 (2006), the Supreme Court held that several circuits, including the Second Circuit, had defined "adverse action" too narrowly in the context of Title VII retaliation. The Court ruled that Title VII's "anti-retaliation provision, unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment." *Id.* at 63–64. But the Court also held that, "The anti-retaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm," *id*. at 64, so that "a plaintiff must show that a reasonable employee would have found the challenged action **materially adverse,** which in this context means it well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.' " *Id.* at 68 (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C.Cir. 2006) (internal citation omitted) (emphasis added)). "Petty slights [and] minor annoyances" in the workplace are not actionable as retaliation. *Id.*

16

In this case, while Ms. Warren surmises that KarenKim's action in refusing to cash her check relates to her having testified during the trial, she does not aver that the incident would have prevented her from so testifying or otherwise participating as a claimant herein. *See Vasquez v. Southside United Hous. Dev. Fund. Corp.*, 2009 WL 2596490 (E.D.N.Y. Aug. 21, 2009), at *13 (citing Burlington, 548 U.S. at 67-68) (plaintiff presented no evidence that alleged retaliatory comments chilled her support of fellow employee who made claim of discrimination or caused her actually to fear reprisal). Thus, even if personally offensive or embarrassing to Ms. Warren, the conduct by KarenKim is not a sufficient basis for a reasonable finder of fact to conclude that the incident would dissuade a reasonable worker from making or supporting a charge of discrimination. *See id.* This is not a case, unlike those cited by EEOC in support of the relief requested herein, where the employer caused a former employee to be arrested and charged with trespass or where the employer filed a defamation lawsuit against the former employee.

That "bad blood" may have developed between the parties to the present litigation would not shock the conscience of any reasonable person given the nature of the allegations in the case. However, Title VII was not designed to police these type of personal disputes. Indeed, the Court finds that the incident complained of by Ms. Warren falls more appropriately into the class of "petty slights [and] minor annoyances" carved out by *Burlington* as beyond the purview of Title VII. 548 U.S. at 68. The Court also takes note of the fact that Paul's Big M is a grocery store and is not, in any event, in the business of banking. It is under no obligation to provide a check cashing service to anyone and as a private business it certainly is entitled to run its affairs in its own way so long as some valid regulatory statute does not tell it to do otherwise.

While the Court is keenly aware of the egregious conduct by Allen Manwaring that was

alleged to be at the heart of EEOC's complaint in this case, it is apparent that the jury in this case believed wholeheartedly the testimony offered by the various claimants and plaintiffs concerning his behavior.  In that light the jury made substantial awards to the claimants of both compensatory and punitive damages to compensate them and punish KarenKim for its conduct in this case.  None of these women are still employed by Paul's Big M, the store has revised its sexual harassment policies and terminated Mr. Manwaring's employment.  In the unlikely event that such harassing conduct were to recur at Paul's Big M, EEOC is certainly free to commence further investigative proceedings and litigation to address those concerns.  Presently, however, plaintiff's EEOC's request for injunctive relief against defendant KarenKim will be denied.

C.      Attorney's Fees

        Plaintiff-Intervenors seek $103,468.46 in attorney's fees and costs.  In the Second Circuit, when presented with a valid[3] application for attorney's fees, courts are to award the presumptively reasonable fee, that is, the fee that would be paid by a reasonable, paying client in the relevant community.  *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 191-93 (2d Cir. 2008).  Courts in the Northern District of New York have determined:

> . . . the reasonable hourly rates in this District, i.e., what a reasonable, paying client would be willing to pay, were $210 per hour for an

---

[3]

Defendant claims that Plaintiff-Intervenors are not entitled to recovery of any attorney's fees because they recovered, collectively, less than $5000 in compensatory damages on all of the claims in the complaint.  The Court rejects this argument, however as Plaintiff-Intervenors, having recovered on their hostile work environment claims, are nevertheless "prevailing parties" under the law and entitled to an award of reasonable attorney's fees.  42 U.S.C. § 2000e-5(k) provides that, "[i]n any action or proceeding under [Title VII] the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee (including expert fees) as part of the costs .... "  Under *Hensley v. Eckerhart*, 461 U.S. 424, 426 (1983), a plaintiff is a prevailing party if he "succeed[s] on any significant issue in litigation which achieves some of the benefit ... sought in bringing suit."  *Id.* (quotation omitted).

> experienced attorney, $150 per hour for an attorney with four or more
> years experience, $120 per hour for an attorney with less than four
> years experience, and $80 per hour for paralegals.

*Picinich v. United Parcel Serv.*, 2008 WL 1766746, at *2 (N.D.N.Y. 2008) (citing, *inter alia*,

*New Paltz Cent. Sch. Dist. v. St. Pierre*, 2007 WL 655603, at *2 (N.D.N.Y. 2007)).

Using the lodestar figures established by courts in this district and turning to Plaintiff-

Intervenor's application for attorney's fees, the Court notes that attorney Bergeron states in his

affidavit that attorney Mimi Satter, a partner in his office who performed some of the work in this

case, has been admitted to the practice of law since 1977.  Mr. Bergeron also avers that another

partner in his office, Mr. Andrews is a 1992 graduate of Georgetown University Law School and

has been practicing in the area of labor and employment law since graduating from law school.

Thus, the Court does not question these attorneys' entitlement to the maximum lodestar

reimbursement rate of $210 per hour.  With respect to Mr. Bergeron's own experience, the Court

notes that while he states he has been admitted to practice since 2002, his experience is not nearly

equivalent to that of his partners.  Clearly, this is an issue on which Mr. Bergeron himself has

some concern in light of his having submitted two attorney affidavits to support his claim of

entitlement to the $210 per hour rate.

Even assuming, however, Mr. Bergeron is entitled to the maximum reimbursement rate,

the Court has more pressing concerns about the substance of his application for fees in this case.

Having presided over the trial in this case, it is clear that Mr. Bergeron did not have the lead role

in prosecuting this matter.  Counsel for plaintiff EEOC did the vast majority of the questioning

and cross-examination of witnesses in this case with Mr. Bergeron asking few, and in some cases,

no questions.  While it is true that Mr. Bergeron obviously took the lead role in questioning his

19

own clients, the Plaintiff-Intervenors, this testimony was proportionately a much smaller part of the trial that the portions led by the two attorneys from the EEOC.  Upon review of the fee application, the Court notes that conservatively, 180 of the 366.6 hours claimed by Mr. Bergeron relate to his preparation for or participation in the trial in which he was a relatively minor participant.

Moreover, while it is true that the jury in this case awarded each of the Plaintiff-Intervenors substantial sums, the bulk of the damages were punitive in nature since there was little, if any, evidence of actual damages presented, a fact reflected in the rather nominal amounts awarded to the three Plaintiff-Intervenors in compensatory damages.  Indeed, insofar as the Plaintiff-Intervenors are concerned, the verdict in this case was a "mixed bag."  The jury rejected Plaintiff-Intervenors' state law claim which sought to impose personal liability on defendant Karen Connors as an alleged aider and abettor of the harassment which occurred at KarenKim.  The jury also rejected Andrea Bradford's retaliation claim and the constructive discharge claims of all three Plaintiff-Intervenors, including all claims for backpay damages.  Of the 24 causes of the action set forth in the complaint, the jury found in favor of Plaintiff-Intervenors solely on their claims of hostile work environment under federal and state law against defendants KarenKim and Allen Manwaring.

Considering that the degree of success is "the most critical factor" in determining the reasonableness of an attorney's fees award, *Farrar v Hobby*, 506 U.S. 103, 114 (1992), it is apparent that awarding attorneys' fees to Mr. Bergeron's firm by simply calculating the lodestar amount would be excessive based on Plaintiff-Intervenor's limited degree of success in this litigation.  *See id.* at 114-15.  The Supreme Court has cautioned that "fee awards under § 1988

20

were never intended to produce windfalls to attorneys...." *Id.* at 115 (internal quotation marks omitted). After considering the amount and nature of damages awarded, "the court may lawfully award low fees or no fees without reciting . . . factors bearing on reasonableness, or multiplying the number of hours reasonably expended by a reasonable hourly rate." *Id.* (internal citations and quotation marks omitted).

In this case, counsel's billing records do not distinguish between the various causes of action. Entries including interviews with witnesses, discussions with counsel and preparation for trial all involved the case, as a whole. Accordingly, it would be impossible to determine which entries applied to which claims. Since it appears that Plaintiff-Intervenor's successful and unsuccessful claims "involved a common core of facts and related legal theories," this Court must focus on the significance of the overall relief obtained when determining a reasonable amount of attorneys' fees, if any. *See Kassim v. City of Schenectady*, 415 F.3d 246, 255 (2d Cir.2005) (affirming a district court's twenty percent reduction of attorneys' fees based on the plaintiff's limited success). In *Khan v. HIP Centralized Laboratory Services, Inc*., 2009 WL 2259643, at *3 (E.D.N.Y. 2009), the court held that the successful and unsuccessful claims were intertwined, but nonetheless concluded that a fee reduction was warranted as, "plaintiff's overall degree of success" was low since the jury rejected the causes of action which included claims for backpay. Weighing all factors, including the fact that plaintiff's counsel still managed to achieve an award of $50,159.91 in total damages on behalf of the plaintiff, the court awarded plaintiff $50,000 in attorneys' fees, inclusive of costs, which represented a reduction of roughly two-thirds. *Id*.

Plaintiff-Intervenor's recovery of minimal compensatory damages entails limited success, despite the amount of the jury's awards. Based thereupon, and upon Mr. Bergeron's limited role

in achieving the overall verdict in this case, the Court finds a sixty percent reduction of the attorneys' fees requested by his firm is warranted.  Accordingly, the Court awards Plaintiff-Intervenors $41,387.38 for attorneys' fees and costs.

III.    CONCLUSION

Based on the foregoing, plaintiff EEOC's motion to amend the judgment is GRANTED, it's motion for injunctive relief is denied and Plaintiff-Intervenors are awarded $41,387.38 on their motion for reasonably costs and attorneys fees.  The Court directs the Clerk to amend the judgment to reduce the amounts awarded by the jury to reflect the impact of Title VII's legal cap on damages as follows:

Emily Anderson: $50,000.00 (consisting of $750 in compensatory damages and $49,250.00 in punitive damages);

Andrea Bradford: $51,900.00 (consisting of $1,900 in compensatory damages and $50,000.00 in punitive damages);

Amanda Cole: $50,000.00 (consisting of $2,050 in compensatory damages and $47,950.00 in punitive damages);

Judith Goodrich: $50,950.00 (consisting of $950 in compensatory damages and $50,000.00 in punitive damages);

Deborah Haskins: $50,775.00 (consisting of $775 in compensatory damages and $50,000.00 in punitive damages);

Rachel (Sivers) Johnson: $50,000.00 (consisting of $500 in compensatory damages and $49,500.00 in punitive damages);

Anna Miller: $50,000.00 (consisting of $1,230.00 in compensatory damages and

$48,770.00 in punitive damages);

Abigail Murray: $50,000.00 (consisting of $675 in compensatory damages and $49,325.00 in punitive damages);

Lorraine (Baldwin) Warren: $23,724.00 (consisting of $250 in compensatory damages and $23,474 .00 in punitive damages); and

Meghan Whitmarsh: $50,000.00 (consisting of $1,000 in compensatory damages and $49,000.00 in punitive damages).

IT IS SO ORDERED.

Date: June 16, 2011

_____
Norman A. Mordue
Chief United States District Court Judge